# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDA CASS, NICOLE FITZER and GRANDMA'S GROCERY, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-13-483-SPS |
| BALBOA CAPITAL CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS

The Plaintiffs in this diversity action are Linda Cass, Nicole Fitzer, and Grandma's Grocery, Inc. ("GGI"). GGI obtained financing from the Defendant Balboa Capital for a Subway Store in Quinton, Oklahoma with shareholders Cass and Fitzer providing their personal guaranties. The financing agreement provided that "[v]enue for any action related to this agreement shall be in an appropriate court in Orange County, California[,]" but the guaranty agreements provided for "consent to the jurisdiction of the County of Orange in the State of California." Balboa sued to collect from the Plaintiffs on these agreements in state court in California, and the Plaintiffs sued Balboa on various related tort claims in this action. Balboa now seeks dismissal, *inter alia*, for improper venue pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3). For the reasons set forth below, the Court finds that Balboa's Motion to Dismiss [Docket No. 8] should be GRANTED and the above-styled action accordingly DISMISSED.

The Plaintiffs assert that venue is proper in this district because all relevant negotiations, conversations, and contract executions occurred here, *i. e.*, in Pittsburg

County, Oklahoma, and because the personal property securing the transaction was likewise located there. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"). Balboa, on the other hand, seeks dismissal of this action because the financing agreement executed by GGI and personal guarantees thereof contain forum selection clauses referencing suit in Orange County, California. Balboa also argues that Cass and Fitzer lack standing to bring the claims they have asserted herein, and that the Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). Nor is this the first action between the parties; Balboa filed a collection suit against the Plaintiffs in state court in California, and the Plaintiffs thereupon sued Balboa in the District Court of Pittsburg County, Case No. CJ-2012-208, alleging related tort claims. Balboa removed the Pittsburg County case to this Court in Case No. CIV-12-373-FHS, which the Plaintiffs thereupon voluntarily dismissed. Cass and Fitzer filed for Chapter 7 bankruptcy in this district in September 2013, and obtained their discharges under 11 U.S.C. § 727 on January 8, 2014. Balboa eventually obtained default judgment against the Plaintiffs in the California collection suit. *See* Case No. 30-2012-00583178-CU-CL-CJC, Docket Nos. 130-132 (April 29, 2014).[1]

Venue is governed generally by 28 U.S.C. § 1391, which sets out the rules for

---

[1] "State court docket sheets are public documents of which the Court may take judicial notice." *White v. City of Tulsa, Okla.*, 2013 WL 4784243, at *1 n.2 (N.D. Okla. Sept. 5, 2013), *citing United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012).

venue in federal district courts.[2] The Supreme Court has recently clarified how to handle the question of venue in the context of a forum selection clause. *See Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, ___ U.S. ___ , 134 S. Ct. 568 (2013). "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3). *Atlantic Marine*, 134 S. Ct. at 577. If "the requirements of § 1391(b) are met," then "venue is proper . . . irrespective of any forum-selection clause[.]" *Atlantic Marine*, 134 S. Ct. at 578. In essence, this "ensures that so long as a federal court has personal jurisdiction over the defendant, venue will always lie somewhere," and that "a contractual bar cannot render venue in that district 'wrong.'" *Atlantic Marine*, 134 S. Ct. at 578. Despite the fact that venue may not necessarily be "wrong," the Court in *Atlantic Marine* held that forum-selection clauses may nevertheless be enforced. In cases where the forum selection clause points to a particular *federal district*, the proper mechanism for enforcement is a motion to transfer under 28 U.S.C. §1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"), but "the appropriate way to enforce a forum-

---

[2] "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)

selection clause pointing to a *state or foreign forum* is through the doctrine of *forum non conveniens*." *Atlantic Marine*, 134 S. Ct. at 579-580 [emphasis added]. Although the Defendant has filed the pending Motion to Dismiss under Rule 12(b)(3), the proper mechanism for obtaining dismissal is the doctrine of *forum non conveniens*, and the Court therefore construes the Defendant's Motion as such. *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173-1174 (10th Cir. 2009) ("[T]he 61 MM Defendants' failure to raise a *forum non conveniens* defense [did not] preclude[] the district court from dismissing the case on that ground[.]"); *Owen v. Kronheim*, 304 F.2d 957, 959 (D.C. Cir. 1962) ("The liberality of the new Federal Rules is such that erroneous nomenclature does not prevent the court from recognizing the true nature of a motion."). *See also PNC Bank, N.A. v. Akshar Petroleum, Inc.*, 2014 WL 1230689, at *3 (M.D. Fla. March 25, 2014) (converting Rule 12(b)(3) dismissal motion to dismissal under *forum non conveniens*; "Despite their reliance on the incorrect procedural mechanism, the parties have adequately briefed the relevant issues concerning the construction of the forum-selection clauses and whether the Court should dismiss the action based on those clauses. Accordingly, rather than delay these proceedings further, the Court will consider whether the forum-selection clauses warrant the dismissal of this case under the *forum non conveniens* doctrine.").

The Court is faced at the outset with the question whether the two forum selection clauses at issue are contractually valid and therefore potentially enforceable. *See Atlantic Marine*, 134 S. Ct. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). Such clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."

*Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992)), *quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Plaintiffs do not argue that the clauses are "unreasonable and unjust" or that they are otherwise "invalid for such reasons as fraud or overreaching[,]" *Bremen*, 407 U.S. at 15, but instead that the clauses do not apply to their tort claims, as distinguished from Balboa's contractual claims. The Court disagrees, however, as it is clear that the Plaintiffs' tort claims arise out of the written agreements between the parties. *See, e. g., Mann v. Automobile Protection Corp.*, 777 F. Supp. 2d 1234, 1243 (D. N.M. 2011) ("Even though the Tenth Circuit has not addressed this issue, the United States Supreme Court has applied a forum selection provision in a case involving tort claims. In addition, other Courts of Appeal have held that where tort claims 'ultimately depend on the existence of a contractual relationship' between the parties, such claims are covered by a contractually-based forum selection clause, despite the 'pleading of alternative non-contractual theories of liability.'"), *citing Carnival Cruise Lines, Inc.*, 499 U.S. 585, 588 (1991) *and Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989). *See also Enriquez v. Seaton*, 2014 WL 791161, at *2 (D. Kan. Feb. 27, 2014) ("If this statement is a claim that the forum-selection clause only covers contract claims, not tortious retaliation claims, the court rejects it."). *Cf. P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (finding that tort-based claims alleged by the Plaintiff "arise out of, or relate to, the [Arbitration] Agreement itself.").

Another preliminary question is whether the forum selection clauses in this case

are mandatory or merely permissive in nature. *Compare RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F. Supp. 3d 1073, 1085 (S.D. Iowa 2014) ("Because *Atlantic Marine's* discussion of forum-selection clauses describes those where 'a plaintiff agrees by contract to bring suit *only* in a specified forum,' the Court finds that the opinion contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens* analysis."), *citing Atlantic Marine*, 134 S. Ct. at 582, *with Radian Guaranty, Inc. v. Bolen*, 18 F. Supp. 3d 635, 651 (E.D. Pa. 2014) ("Without deciding that question, I agree generally with the Supreme Court that the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses."). Regardless what law applies, the forum selection clause in the financing agreement *between Balboa and GGI* would appear to be mandatory: "This agreement shall be governed by the law of the State of California. Venue for any action related to this agreement shall be in an appropriate court in Orange County, California, or the home county and state of anyone holding Creditor's interest as it may be assigned from time to time, to which Debtor consents, or in an appropriate court in another jurisdiction selected by Creditor which has jurisdiction over the parties." Docket No. 8, Ex. 1. Such language reflects a mandatory forum selection clause under Tenth Circuit and Oklahoma law, *see, e. g., Tri-Lakes*, 2014 WL 1789391, at *3 ("A mandatory forum selection clause[] contains clear language showing that jurisdiction is appropriate only in the designated forum."), *quoting Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997), *quoting Thompson v. Founders Group Int'l, Inc.* 886 P.2d 904, 910 (Kan. App. 1994), and *citing Beverly Enterprises-*

*Texas, Inc. v. Devine Convalescent Care Center*, 2012 OK CIV APP 16, ¶ 18, 273 P.3d 890, 894. *See also Am. Soda, LLP v. U.S. Filter Wasterwater Group*, 428 F.3d 921, 927 n.4 (10th Cir. 2005) (stating that the use of the word "shall" and a specific county designation results in a mandatory forum selection clause); *Milk 'N' More*, 963 F.2d at 1346 ("The use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made."), and under California law as well. *See, e. g., CQL Original Products, Inc. v. National Hockey League Players' Assn.*, 39 Cal. App. 4th 1347, 1358 (1995) (finding "any claims arising hereunder shall, at the Licensor's election, be prosecuted in the appropriate court of Ontario" to be a mandatory forum selection clause). *See also Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006); *Madick Insurance Services v. 3 Mark Financial, Inc.*, 2014 WL 852346, at *3-4 & n.5 (Cal. App. 2nd Dist. March 5, 2014). The question remains, however, whether this mandatory forum selection clause warrants dismissal under *forum non conveniens*.

Traditionally, the *forum non conviens* doctrine requires the balancing of a number of public and private interest factors.[3] *Atlantic Marine* modified that analysis in three ways, stating:

---

[3] "The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive. Public interest factors that are part of the balancing include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . [W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises. . . . Second, a court . . . should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Atlantic Marine*, 134 S. Ct. at 581-582. Although the three changes to the analysis were specifically applied in the context of a §1404(a) transfer of venue analysis, the Court stated that such considerations would likewise apply with regard to *forum non conveniens*. *See Atlantic Marine*, 134 S. Ct. at 580 ("And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."), *citing Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 37 (1988). Despite the general conventions of the *forum non conveniens* analysis, under the rubric announced in *Atlantic Marine*, the Court thus applies the doctrine of *forum non conveniens* with the understanding that, "[a]s a consequence, a district court may consider arguments about public-interest factors only." *Atlantic Marine*, 134 S. Ct. at 581 n. 6 &

---

law." *Yavuz*, 576 F.3d at 1180 *citing Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998), *citing Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947).

582. The *Atlantic Marine* Court noted that such a seemingly harsh result was not so harsh in light of the fact that the parties knowingly entered into the contractual agreement designating that forum. *Atlantic Marine*, 134 S. Ct. at 583 n.8 ("Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case. That inconveniences plaintiffs in several respects and even 'makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate.' Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause.").

Applying the *forum non conveniens* analysis as modified by *Atlantic Marine* to the agreement between Balboa and GGI, the Court finds that the balancing of the public interest factors weigh in favor of dismissal. *See Yavuz*, 576 F.3d at 1180 ("Public interest factors that are part of the balancing include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law."), *citing Gschwind,* 161 F.3d at 606, *citing Gulf Oil Corp*, 330 U.S. at 508. Applying California law in Oklahoma could create a number of difficulties, and the appropriateness of trying the case in a forum familiar with the governing law outweighs the arguments related to the burden of jury duty and local interest. Furthermore, consistent with *Atlantic Marine*, the forum selection clause itself indicates that California

state court is the more appropriate forum. "As the Supreme Court noted, such factors 'will rarely' justify non-enforcement of a valid clause. Indeed, no public interest considerations have been raised by the parties, and, in the Court's view, such considerations carry no weight here." *Fubon Ins. Co. Ltd. V. OHL International*, 2014 WL 1383604, at *8 (S.D. N.Y. Mar. 31, 2014) (slip op.), *citing Atlantic Marine*, 134 S.Ct. at 582. As a result, "dismissal would work no injustice on the plaintiff." *Atlantic Marine*, 134 S. Ct. at 583 n.8, *citing Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955). The Court therefore finds that the claims asserted by GGI should be dismissed under the doctrine of *forum non conveniens*.

The language of the forum selection clauses in the guarantee agreements *between Balboa and Cass and Fitzer* are not, however, mandatory but merely permissive in nature: "This Personal Guaranty is governed by the laws of the state of California. You consent to the jurisdiction of the County of Orange in the State of California." *See* Docket No. 8, Ex. 2. *See K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft,* 314 F.3d 494, 500 (10th Cir. 2002) (finding the forum-selection clause permissive because it referred only to jurisdiction, and not venue, and did so in non-exclusive terms). The Court nevertheless need not resolve the question whether *Atlantic Marine* applies to a merely permissive forum selection clause, *compare, e. g., RELCO Locomotives, Inc.*, 4 F. Supp. 3d at 1085 ("Because *Atlantic Marine's* discussion of forum-selection clauses describes those where 'a plaintiff agrees by contract to bring suit *only* in a specified forum,' the Court finds that the opinion contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens*

analysis."), *citing Atlantic Marine*, 134 S. Ct. at 582, *with Radian Guaranty, Inc.*, 28 F. Supp. 3d at 651 ("Without deciding that question, I agree generally with the Supreme Court that the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses."), because it is clear that Cass and Fitzer's claims must be otherwise dismissed pursuant to Fed. R. Civ. P. 17(a) because they are not the real parties in interest. In this regard, the events giving rise to the claims asserted by Cass and Fitzer had undoubtedly occurred by August 2012, when they first sued Balboa on such claims in Oklahoma. Ownership of those claims then transferred to their Chapter 7 trustees when they filed bankruptcy in September 2013 pursuant to 11 U.S.C. § 541. *See, e. g., Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (Section 541 covers, *inter alia*, all "legal claims and causes of action, pending or potential, which a debtor might have"). "A formal abandonment, including compliance with the notice requirements of the Bankruptcy Code, is required to vest the right to pursue the estate's causes of action in the debtor." *Cook v. Baca*, 512 Fed. Appx. 810, 820 (10th Cir. 2013), *citing Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004). "Proper abandonment requires the trustee to give notice to [the] creditors and, if any object to abandonment, the bankruptcy court to hold a hearing. There is no indication that notice, much less a hearing, occurred." *Smith v. UPS*, 578 Fed. Appx. 755, 759 (10th Cir. 2014), *citing Auday v. West Seal Retail, Inc.*, 698 F.3d 902, 905 (6th Cir. 2012), *citing* 11 U.S.C. § 554(a) and Fed. R. Bankr. P. 6007(a). *See also Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) ("The bankruptcy code imposes a duty upon a debtor to disclose all assets, including . . .

all legal claims and causes of action, pending or potential, which a debtor might have."). Under 11 U.S.C. § 554(d), "property of the estate that is not abandoned under this section and that is not administered in the case remains the property of the estate." "As a result, the debtor loses all rights to enforce any unscheduled legal claim in his own name." *Clark v. Trailiner Corp.*, 242 F.3d 388, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (unpublished table opinion).

"Because the claims [asserted by Cass and Fitzer] were not abandoned, they still belong to [the] estate. And the trustee is still the real party in interest." *Smith v. UPS*, 578 Fed. Appx. at 759. "Because the plaintiff[s are] not a real party in interest, [they] lack standing, and the Court does not have jurisdiction over [their] claims." *Wilson v. Tucker*, 2011 WL 43089, at *3 (N.D. Okla. Jan. 5, 2011). Nevertheless, Fed. R. Civ. P. 17(a)(3) prohibits dismissal for failure to prosecute in the name of the real party in interest "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." The Plaintiffs have been aware of Balboa's concerns regarding abandonment since at least March 11, 2014, and yet neither they nor their bankruptcy trustee have made any attempt to correct the problem or substitute the real party in interest. *See Wilson v. Tucker*, 2011 WL 43089, at *3 ("However, Rule 17(a)(3) does not apply universally, but rather only 'to cases in which substitution of the real party in interest is necessary to avoid injustice.'"), *quoting* 6A Charles Alan Wright, Arthur Miller, Mary Kay Kane, and Richard L. Marcus, *Federal Practice and Procedure* § 1555 (3d ed. 1998). A reasonable time having been afforded to resolve the issue, the Court may now dismiss the claims asserted by Cass and Fitzer

pursuant to Fed. R. Civ. P. 17(a). *See Henderson v. Benchmark Strategy, LLC*, 2011 WL 3608107, at *4 (D. Colo. Aug. 16, 2011) ("Since [an October 8, 2011 Order to Show Cause], no effort has been made to substitute Henderson LLP as the real party in interest . . . No further delay is necessary or appropriate."), *citing Wilson v. Tucker*, 2011 WL 43089, at *3.

For the reasons set forth above, the Defendant Balboa Capital Corporation's Motion to Dismiss [Docket No. 8] is hereby GRANTED.

IT IS SO ORDERED this 27th day of March, 2015.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma